DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**JOHN THOMAS,**
Appellee.

No. 4D18-1646

[February 20, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Judge; L.T. Case No. 14-15234CF10A.

Ashley B. Moody, Attorney General, Tallahassee, and Allan R. Geesey, Assistant Attorney General, West Palm Beach, for appellant.

Antony P. Ryan, Regional Counsel, and Paul O'Neil, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellee.

GERBER, C.J.

The state appeals from the trial court's post-verdict order granting the defendant's motion for judgment of acquittal on the charge of delivery of cocaine. The state argues that viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt and, thus, sufficient evidence existed for the trial court to have denied the motion. We agree with the state's argument and reverse.

The crime was documented by the undercover officer's vehicle's three audio/video recorders, showing: (1) the interior compartment and driver's window; (2) a close-up of the driver's window; and (3) a close-up of the front passenger window. We will describe in detail what the video shows.[1]

---

[1] According to the transcript of the hearing on the motion for judgment of acquittal, the court asked, "[J]ust out of curiosity, this does seem to come down to the video. You think the folks in West Palm Beach are going to sit down and look at the video?" The answer is yes.

### *What the Video Shows*

The event occurred at midday, in broad daylight. The undercover officer is seen driving down a street when he says that he is being flagged down. The officer pulls into a parking lot. One man (not the defendant or co-defendant) runs up to the driver's open window. Simultaneously, the co-defendant and the defendant walk towards the front passenger open window.

The co-defendant says, "I'm right here, what you need?" The co-defendant leans on the front passenger open window and holds his hands open just above the door. The co-defendant's hands are empty. The defendant also leans onto the front passenger door with his left hand hanging over the door. The defendant's left hand is empty.

The officer, facing the man at the driver's window, asks "You got soft? You got soft?" (slang for powder cocaine). The defendant asks the officer, "How much soft?" The co-defendant also asks the officer, "How much soft?" The officer says, "a double soft" (slang for a $20 amount). The man at the driver's window says that he's got "hard" (slang for crack cocaine).

The officer turns towards the co-defendant and the defendant at the front passenger window and asks, "You got soft?" The co-defendant asks the officer, "How much you need?" The officer replies, "a double soft." The co-defendant says, "I got you."

Both the defendant and the co-defendant take a few steps back from the front passenger window and say something to each other, which cannot be heard on audio. The defendant's right hand now can be seen, and it is empty. While that is occurring, the officer buys some "hard" from the man at the driver's window, and that man walks away.

The co-defendant and the defendant step back to the front passenger window. The co-defendant again holds his hands open just above the door. The co-defendant's hands are still empty. The co-defendant says, "Oh damn man I got number 40 (slang for a $40 amount). I ain't no 20. They good though. They good." The officer asks, "40 a soft?" The co-defendant replies, "Yeah." The officer says, "Alright, I'll take a 40." The co-defendant says, "Alright, stay right here."

The defendant and the co-defendant again take a few steps back from the window, saying something to each other, which cannot be heard on audio. The co-defendant, while looking at the defendant, points back to

the officer. The defendant gestures towards himself. The co-defendant walks a few feet further away towards a tree with a bike leaning against it.

The defendant, while pointing towards a trashcan located several feet behind the officer's vehicle, says something to the co-defendant, which cannot be heard on audio. The co-defendant immediately stops walking towards the tree, and instead turns in the direction of the trashcan. Both the defendant's hands and the co-defendant's hands are still empty.

The defendant walks past the co-defendant towards the trashcan, and the co-defendant instead walks around the back of the officer's vehicle towards the driver's window. The defendant gets to the trashcan as the co-defendant gets to the driver's window. The defendant takes five seconds reaching to get something out of the trashcan, then jogs and walks back towards the driver's side. While the defendant is doing those things, the co-defendant, standing at the driver's window, tries to get the officer to buy some more "hard." The officer replies, "I don't need no hard."

As the defendant walks closer to the driver's side, the co-defendant turns his face to the right, towards the defendant, while saying to the officer, "I got that powder right here."

The officer uses his right hand to pull two bills (presumably $20 bills) from several bills in his left hand. The officer puts the remaining bills back into his left pocket using his left hand. The officer then moves the two bills from his right hand into his left hand beneath the steering wheel.

The co-defendant turns his face back to the officer and says "get my number." As the officer uses his right hand to take his cell phone from his right pocket, the officer turns his face away from the co-defendant standing at the driver's door, and instead looks forward at his cell phone.

While the officer is looking forward, the defendant walks up to the co-defendant's right side. The co-defendant turns his face toward the defendant and looks downward for one second. During that one second, the camera views are unable to show on video what is occurring below the driver's door, where the defendant's and co-defendant's hands are located.

After that one second, the defendant walks behind the co-defendant to stand on the co-defendant's left side, and the co-defendant reaches both of his hands into the officer's vehicle. The co-defendant's right hand puts a small baggie of powder cocaine into the officer's left hand, and the co-defendant's left hand takes the two bills from the officer's left hand.

3

The co-defendant moves his clenched left hand up behind his left ear, in the direction of the defendant to his left, with one of the two bills almost fully protruding and the other bill barely protruding. In the next second, the defendant's right arm reaches up to the co-defendant's left hand. In the second after that, two things happen simultaneously: the defendant's right arm moves back down to his side, and the co-defendant brings his left hand slightly forward near his left ear, now with only a single bill barely protruding from his left hand.

The co-defendant then says a phone number, while the officer types the number into his cell phone. The officer asks for the co-defendant's name. The co-defendant says "James," which the officer types into his cell phone. The officer asks for the defendant's name. The defendant says "Goldie," which the officer types into his cell phone.

But before the officer can ask for the defendant's number, the first man who sold the "hard" (crack cocaine) to the officer comes up to the driver's side window. The officer says, "I can get your number too . . . Everyone wants to give me their number." The officer asks for the first man's name. The first man says "Trey" and gives a phone number. The officer types the name and number into his cell phone.

The defendant then says, "Goldie got the 'soft.'" The officer responds, "Goldie got the 'soft.' So I got Trey got me 'hard.' I got James got everything for me." The officer asks for the defendant's number. The defendant gives a phone number, which the officer types into his cell phone.

The three men walk away. The officer drives away. The videos end.

### *The Parties' Arguments and Our Standard of Review*

The state's briefs argue that the trial court erred in granting the defendant's motion for judgment of acquittal. According to the state, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt and, thus, sufficient evidence existed for the trial court to have denied the motion.

Specifically, the state argues the jury could (and did) find the defendant guilty of delivery of cocaine based on the state's "principals" theory upon which the jury was instructed. According to the state, given the undisputed fact that the co-defendant delivered cocaine to the officer, the only two factual issues for the jury were whether, under the "principals" instruction, the defendant: (1) helped the co-defendant commit the crime

4

of delivery of cocaine; (2) had a conscious intent that the crime of delivery of cocaine be committed; and (3) did some act or said some word which was intended to and which did assist the co-defendant to actually commit the crime of delivery of cocaine.

The defendant's brief argues the trial court did not err when it granted the defendant a post-verdict judgment of acquittal. According to the defendant, the state's evidence against him was wholly circumstantial and failed to rebut every reasonable hypothesis of innocence. The defendant argues, as the undercover officer conceded at trial, it is possible that the co-defendant had the powder cocaine on his person the whole time, while the defendant merely witnessed the transaction and did not participate.

In *Pagan v. State*, 830 So. 2d 792 (Fla. 2002), our supreme court set forth our standard of review of a motion for judgment of acquittal:

> In reviewing a motion for judgment of acquittal, a de novo standard of review applies. . . . If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction. However, if the State's evidence is wholly circumstantial, not only must there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant's reasonable hypothesis of innocence. [Where] the evidence [is] both direct and circumstantial, it is unnecessary to apply the special standard of review applicable to circumstantial evidence cases.

*Id.* at 803 (citations omitted). The standard of review does not change for a judgment of acquittal granted post-verdict. *See State v. Johnson*, 209 So. 3d 23, 26 (Fla. 4th DCA 2016) ("In matters . . . which concern a trial court's order granting a motion for judgment of acquittal entered after a jury's verdict of guilt, this court conducts a de novo review of the record to determine whether sufficient evidence supports the jury's verdict.") (citation omitted).

### *Our Analysis*

Applying *Pagan* to the instant case, the special standard of review applicable to circumstantial evidence cases does not apply here. The State's evidence was both direct and circumstantial. The direct evidence was the video recording's documentation of all of the defendant's actions during the entire event. The only circumstantial evidence was the

5

defendant's actual possession of the cocaine, because the video is too distant to show whether the object which the defendant obtained from the trashcan was cocaine, and later because the driver's door blocks the video's view of whether the defendant handed the cocaine to the co-defendant at the driver's side. The fact that the defendant's actual possession of the cocaine is the only circumstantial evidence does not turn this case into a *wholly* circumstantial evidence case, given the direct evidence on video of all of the defendant's actions during the entire event.

Viewing the video evidence in the light most favorable to the State, we conclude that a rational trier of fact could find the existence of the elements of delivery of cocaine beyond a reasonable doubt.

Florida Standard Jury Instruction (Criminal) 25.2 defines the elements of delivery of cocaine, which was modified for instruction to this jury, in pertinent part, as:

> 1. [The defendant] delivered a certain substance.
> 2. The substance was cocaine.
> 3. [The defendant] had knowledge of the presence of the substance.

> "Deliver" or "delivery" means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship.

*See* Fla. Std. Jury Instr. (Crim.) 25.2.

Further, Florida Standard Jury Instruction (Criminal) 3.5(a) defines "Principals," which was modified for instruction to this jury as:

> If the defendant helped another person or persons commit a crime, the defendant is a principal and must be treated as if he had done all the things the other person or persons did if:

> 1. the defendant had a conscious intent that the criminal act be done and

> 2. the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually commit the crime.

6

> To be a principal, the defendant does not have to be present when the crime is committed.

*See* Fla. Std. Jury Instr. (Crim.) 3.5(a).

Here, the video indisputably showed that the co-defendant delivered cocaine to the undercover officer. Thus, the only issue was whether the video provided sufficient evidence from which a rational trier of fact could find that the defendant was a principal who helped the co-defendant to deliver the cocaine.

The video provided that evidence. The video shows that the defendant had a conscious intent that the crime of delivery of cocaine be done, based on his approaching the vehicle side-by-side with the co-defendant, with both of them asking the officer "How much soft?"

The video also shows that the defendant did some act or said some word which was intended to and which did assist the co-defendant to actually commit the crime of delivery of cocaine. Both the defendant's and the co-defendant's hands were empty when they proposed to sell cocaine to the officer. When the officer agreed to buy the cocaine, neither the defendant nor the co-defendant immediately delivered the cocaine to the officer. Instead, the co-defendant and the defendant backed away to have a conversation. The defendant next hurriedly walked to a nearby trashcan and obtained an item from the trashcan, while the co-defendant simultaneously walked around to the driver's window but still without delivering the cocaine to the officer. When the defendant walked up to the co-defendant at the driver's window, the co-defendant faced the defendant while saying to the officer, "I got that powder right here." Only after the one second when the defendant walked up to the co-defendant's right side, with their hands out of camera view, was the co-defendant finally able to deliver the cocaine to the officer. The co-defendant holds up the two $20 bills in the direction of the defendant, who appears to take one of the $20 bills. The defendant then tells the officer "Goldie got the 'soft.'"

### *Conclusion*

In sum, after viewing the video evidence in the light most favorable to the state, we conclude that a rational trier of fact could (and in fact, did) find the existence of the elements of delivery of cocaine beyond a reasonable doubt.

Even if we were to conclude that the special standard of review applicable to circumstantial evidence cases applied here (which we do not),

7

we still would conclude sufficient evidence existed not only to establish each element of the offense beyond a reasonable doubt, but also to exclude the defendant's hypothesis that he merely witnessed the transaction and did not participate. The video evidence described above not only belies that hypothesis, but makes that hypothesis appear facially unreasonable. *See Westbrooks v. State*, 145 So. 3d 874, 878 (Fla. 2d DCA 2014) ("The State is not required to rebut a hypothesis of innocence that is unreasonable.").

Based on the foregoing, we reverse the trial court's post-verdict order granting the defendant's motion for judgment of acquittal. We remand for the trial court to reinstate the guilty verdict, and proceed to sentencing.

*Reversed and remanded for reinstatement of verdict and for sentencing.*

CIKLIN and KUNTZ, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***